UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STUART M. JOHNSON,

    Plaintiff,

v.                                            Case No. 1:09-cv-984
                                            Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on March 16, 1961 (AR 141).[1] He earned a GED in 1979 (AR 210). Plaintiff alleged a disability onset date of July 3, 2004 (AR 141). He had previous employment as a laborer and sprinkler system installer (AR 204, 216). Plaintiff identified his disabling conditions as "asthma, brittle diabetes impairment, diabetes neuropathy, bad knees, multiple joint arthritis, degenerative disc disease, lumbar spine impairment, hypertensive cardiovascular disease/hypertension, torn ligaments, [and] bone spurs" (AR 203). On December 11, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 25-33). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits

is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of July 3, 2004, and met the insured status requirements as of the Social Security Act through September 30, 2004 (AR 27). At step two, the ALJ found that plaintiff suffered from severe impairments of: carpal tunnel syndrome; sleep apnea; degenerative disc disease; degenerative joint disease; diabetes; obesity; and non-severe alcohol abuse in remission[2] (AR 27-29). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 30).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform a limited range of light work:

> . . . except that he is able to stand/walk 2 hours per 8-hour work day. He is limited to occasional pushing, pulling, gripping, grasping, handling, fingering, and feeling. He should not be required to do fine manipulation or forceful gripping or grasping. He should not operate foot controls. He should not work above chest level. He should avoid repetitive bending, twisting, squatting, kneeling, crawling or climbing. He uses a cane to aid in ambulation. He should not be exposed to concentrated fumes, dusts or gases, or to extremes of temperature.

(AR 30). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 18).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of light jobs in the national economy (AR 32). Specifically, plaintiff could perform approximately

---

[2] Plaintiff testified at the administrative hearing that until 1999 he drank a gallon of whiskey every day, that he switched to drinking a case of beer every other day, and that he quit drinking alcohol about one year before the hearing (AR 44). However, plaintiff later testified that he drank "a beer" with his brother the week before the hearing (AR 45).

4

21,800 jobs in the regional economy (defined as the State of Michigan) such as: machine tender (8,800 jobs); counter clerk (8,200 jobs); and line attendant (4,800 jobs) (AR 32). Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act at any time from July 3, 2004 through the date his decision (AR 32-33).

### III. ANALYSIS

Plaintiff, proceeding *pro se*, did not file a brief as required by the court's order. Plaintiff's failure to follow the briefing schedule resulted in the issuance of an order to show cause as to why his case should not be dismissed. *See* Order (docket no. 8). The court subsequently determined that plaintiff intended to pursue his appeal, construed plaintiff's response to the show cause order as his initial brief, and amended the briefing schedule. *See* Order (docket no. 10). Construed broadly, plaintiff's briefs raise six issues on appeal.[3] In his initial brief, plaintiff contends that the agency erred because doctors have stated that he cannot work indefinitely. *See* Brief (docket no. 9). In his one-page reply brief, plaintiff contends: that "a back specialist in Saginaw stated back surgery would not do me any good;" that his glasses are not "over the counter;" that he did not cancel pain clinic treatments; that the left carpal tunnel surgery did not work "because I cannot grip without dropping things;" and that defendant will not use evidence of nerve damage in his back or legs to support his claim. *See* Reply Brief (docket no. 13).

### A. Physician statements regarding ability to work

---

[3] The court notes that plaintiff's initial one-page brief consists mainly of derogatory comments (e.g., "I feel such that the S.S. Dept has been screwing me for years," "it is ridiculous that I can't work but some people get S.S. that aren't disabled," and "it is so not funny that people who don't walk in my shoes can say I am not disabled"). *See* docket no. 9. Plaintiff's one-page reply brief consists mainly of disagreements with matters set forth in defendant's brief and derogatory comments (e.g., pointing out a "false statement," pointing out various "lies" by defendant, and stating that "I am getting screwed again"). *See* docket no. 13.

Plaintiff contends that physicians have stated that he cannot work for an indefinite period. However, plaintiff does not identify these opinions. Defendant notes that the only opinions appearing before the ALJ were those of Amarish S. Potnis, M.D. (AR 254, 392, 568, 570-71). On December 30, 2005, Dr. Potnis reported to plaintiff's counsel that plaintiff had "musculoskeletal limitations of low back pain," as well as right shoulder pain, right shoulder surgery, ongoing lower back pain and limitations of range of motion in the lumbar spine (AR 254). The doctor concluded that, "[o]verall, I feel it would be difficult to sustain meaningful work related activities" (AR 254). On July 20, 2006, Dr. Potnis reported to plaintiff's counsel that plaintiff had a diagnosis of "low back pain with degenerative changes of the lumbar spine" (AR 392). The doctor stated that "I do not feel that the patient can do full time competitive work" and that "[t]his is to last for at least 12 months" (AR 392).

In a letter dated November 12, 2007, Dr. Potnis stated that given plaintiff's conditions (which included lower back pain, insulin dependent diabetes, right shoulder pain, right shoulder surgery, rotator cuff tear, chronic obstructive pulmonary disease, left carpal tunnel syndrome, morbid obesity with obstructive sleep apnea, dyspnea and the need to use two canes for ambulation) "it would be difficult to sustain meaningful work related activities" and that it would be "reasonable to conclude that his poor health and restrictions began 10 years ago when he was no longer able to work as a result" (AR 570).

On a prescription form which appears to be dated October 1, 2008,[4] Dr. Potnis stated, "No work status - Indefinite" (AR 568). Finally, in a statement which appears to be dated November 10, 2008, Dr. Potnis stated as follows:

---

[4] The date on the record is partially obscured.

> I hereby state that [plaintiff] has been a patient of mine and, in my best medical opinion, is totally disabled without consideration of any past or present drug and/or alcohol use. Drug and/or alcohol use is not a material cause of this individual's [unintelligible].

(AR 571).

Although Dr. Potnis was a treating physician, the ALJ was not bound by the doctor's conclusion that plaintiff was unable to work. *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled" ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Accordingly, plaintiff's claim of error on this ground should be denied.

### B. Plaintiff's history of back treatment

Plaintiff's main claim is that he suffers from a disabling back condition, which first arose when he lifted a heavy bay door in 1980 (AR 28, 52). In determining that plaintiff's back condition was not disabling, the ALJ found that plaintiff "failed to comply with conservative therapy," "did not want injections," and "preferred to see a surgeon" (AR 28). In his briefs, plaintiff contested the accuracy of the ALJ's findings, asserting that he is not a candidate for back surgery and that he did not cancel pain clinic treatments.

The ALJ related the following history of plaintiff's condition. Plaintiff had a 15 to 20 year history of chronic back pain, without radicular symptomology, and only mild degenerative findings (AR 28). In November 2005, plaintiff had pain in the neck and back from the mid-lumbar

region to the right hip and buttocks (AR 28). He had a stable gait without an assistive device, but sometimes used a cane (AR 28). X-rays in November 2005 revealed mild degenerative changes in the cervical spine at C4-5 and C5-6, osteoarthritic changes along the lower lumbar spine at L3-4 and L4-5, and minimal compression deformity in the lower thoracic region especially at T12 and T10 (most likely from old injuries) (AR 28, 246-47, 347-48). An MRI scan in February 2005 revealed degenerative changes of the lumbar spine (including small posterior bulging disc at the T12-L1 disc level and mild posterior lateral bulging disc at L5-S1 disc level), but without focal disc herniation or spinal canal stenosis (AR 28, 347).

In April 2005, a neurosurgeon, William P. Diefenbach, M.D., examined plaintiff regarding a long history of chronic back pain without radicular symptomology (AR 409). The doctor noted that an MRI scan of plaintiff's back showed mild degenerative changes, and concluded in pertinent part:

> It is obvious on examination that the patient is markedly overweight and this certainly is contributing to his back problem. Weight reduction would be of a marked benefit to this patient. This was discussed with him. I recommend that he be referred to a dietician for dietary consideration. For the chronic back pain, we will also obtain a bone SPECT bone scan, looking to see if there is any facet arthropathy that might respond to localized cortisone injections.

(AR 409).

Plaintiff subsequently attended a pain management clinic on June 7, 2005, with an assessment of low back pain and lumbar spondylolysis (AR 388-89). Clinic personnel noted that because plaintiff failed conservative management of his pain, they would initiate a course of lumbar epidural steroid injection, "possibly supplemented with paravertebral lumbar facet block" (AR 389). However, the records reflect that after the initial consultation, plaintiff "called and canceled all of his appointments and did not undergo interventional management" (AR 386).

Plaintiff returned to the pain clinic on June 27, 2006 with the same assessment as the previous year (AR 386). Clinic personnel noted that plaintiff was not interested in medical intervention at the clinic:

> Stuart is a returning patient with the same lower back pain for which he has been seen and evaluated in the past. He is very clear that he does not want to undergo interventional management, instead preferring a surgical consultation of his lumbar spine. Our plan will be to discharge him from the Pain Management Network and have him follow on an as needed basis based on the surgeons [sic] recommendations.

(AR 386). In August 2006, plaintiff informed Dr. Potnis that "he is not interested in pursuing injections" (AR 390). There is no evidence that plaintiff saw a surgeon after refusing the injections.

The ALJ's findings that plaintiff "failed to comply with conservative therapy," "did not want injections," and "preferred to see a surgeon" are supported by substantial evidence in the administrative record. Accordingly, plaintiff's claim that the ALJ made erroneous findings should be denied.

### C. Evidence of nerve damage

In his reply brief, plaintiff asserts that the agency "won't use evidence of nerve damage in back or legs." This assertion appears to be in response to defendant's statement that diagnostic findings of disc herniations did not constitute proof of disability. *See* Defendant's Response at p. 14, citing *Mattingly v. Secretary of Health and Human Services*, No. 90-5900, 1991 WL 86257 at *3 (6th Cir. May 24, 1991) "([p]roof of a herniated disc does not constitute automatic proof of a disability"). Defendant's position is a formulation of the rule that a mere diagnosis does not establish disability under the Social Security Act. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680

9

at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988). *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition"). This claim of error should be denied.

### D. Eyeglasses

Plaintiff's claim regarding eyeglasses is unclear. In his brief, defendant noted that in August 2007, an optometrist at a VA facility conducted a diabetic eye exam; concluded that plaintiff had diabetic neuropathy and farsightedness; provided plaintiff with reading glasses (i.e., "+1.50 OTC readers through the VA"); recommended good blood sugar control; and advised plaintiff to return in one year (AR 438). Defendant's Brief at p. 7. Plaintiff asserts that he has prescription glasses and that defendant's statement is false. *See* Plaintiff's Reply Brief. Prior to raising this issue in his reply brief, plaintiff did not claim to be disabled due to impaired vision and the ALJ did not address the issue. Plaintiff has presented no evidence to establish that his need for reading glasses renders him disabled. The ALJ accurately characterized plaintiff's limited interaction with the optometrist. Accordingly, plaintiff's claim should be denied.

### E. Left carpal tunnel surgery

Plaintiff was diagnosed with carpal tunnel syndrome in March 2008 and a surgical release of the left hand was scheduled in April 2008 (AR 457, 461). After reviewing the medical records, the ALJ found that an EMG and nerve conduction study demonstrated evidence of carpal tunnel syndrome; that plaintiff had "persistent classical signs of carpal tunnel syndrome in the left hand after conservative management had failed;" and that plaintiff underwent a surgical release on the left in April 2008 (AR 27). Plaintiff contends that his left carpal tunnel surgery was not successful and that he cannot grip or hold things in his left hand. Defendant points out that there is no medical evidence demonstrating that the carpal tunnel surgery failed to remedy plaintiff's

condition. At the hearing, plaintiff testified: that he had surgery in May 2008; that he could lift 10 to 15 pounds while sitting; and that lifting from the waist he could carry only a plate of food (AR 58-59). Plaintiff also testified that he could not move the fingers on his left hand very well and demonstrated his range of motion for the ALJ (AR 58).

The ALJ accurately summarized the medical evidence with respect to the treatment of plaintiff's left carpal tunnel syndrome. To the extent that plaintiff had post-surgery limitations in using his left hand, the ALJ addressed these by limiting plaintiff to work which involved only occasional pushing, pulling, gripping, grasping, handling, fingering, and feeling, and eliminating positions which required plaintiff to do fine manipulation or forceful gripping or grasping (AR 30). The ALJ's findings are supported by substantial evidence. Plaintiff's claim that he has disabling limitations related to the carpal tunnel syndrome should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated: January 24, 2011                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).